

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

VASKEN ATYEMIZIAN,

Plaintiff,

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

Defendant.

No. CV 09-4194-PLA

**MEMORANDUM OPINION AND ORDER**

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 17, 2009, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 10, 2009, and August 17, 2009. Pursuant to the Court's order, the parties filed a Joint Stipulation on December 4, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on March 21, 1958. [Administrative Record ("AR") at 84, 98, 793.] He has a sixth-grade education, and past relevant work experience as an auto mechanic. [AR at 91, 96, 728-29, 794.]

Plaintiff filed his application for Disability Insurance Benefits on September 10, 2002, alleging that he has been unable to work since February 11, 2002, due to, among other things, back pain. [AR at 84-86, 89-97.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 42-50.] A hearing was held on January 15, 2004, at which plaintiff appeared with counsel and testified, through an interpreter, on his own behalf. [AR at 719-46.] A second hearing was held on November 3, 2004, at which plaintiff appeared with counsel, and a medical examiner testified. [AR at 747-80.] On June 7, 2005, the ALJ issued a decision denying benefits. [AR at 672-83.] Plaintiff submitted a request for review of the hearing decision, and on October 31, 2006, the Appeals Council vacated the decision and remanded the case to the ALJ for further proceedings. [AR at 684, 688-91.] A third administrative hearing was held on July 23, 2007, at which plaintiff again appeared with counsel and testified, through an interpreter, on his own behalf. [AR at 785-800.] The ALJ issued a second decision denying benefits on March 27, 2008. [AR at 20-39.] When the Appeals Council denied plaintiff's request for review of the second decision on May 20, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 11-15, 19.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B. REFUSAL TO ATTEND CONSULTATIVE EXAMINATION**

If a claimant's medical records are insufficient to make a disability determination, the Commissioner (or ALJ) has a duty to further develop the record. Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); 20 C.F.R. §§ 404.1512(d)-(f), 416.912(d)-(f). This duty to develop the record is heightened where, as here, the claimant alleges a mental impairment.[1] Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992). In developing the medical evidence, the Commissioner may properly ask a claimant to undergo additional examinations or tests, including consultative examinations scheduled and paid for by the Commissioner. See 20 C.F.R. §§ 404.1512(f), 404.1517, 404.1519a, 416.912(f), 416.917, 416.919a. When a claimant fails to provide a good reason for missing a consultative examination arranged by the Commissioner, disability benefits may properly be denied. See 20 C.F.R. §§ 404.1518(a), 416.918(a). Examples of good reasons for a claimant to miss a consultative examination include: 1) illness on the date of the scheduled

---

[1] As discussed below, the ALJ determined that plaintiff has the severe mental impairment of depression. [AR at 28.] Additionally, plaintiff contends that he meets § 12.05C of the Listing for mental retardation. [Joint Stipulation ("JS") at 14-16.]

examination; 2) failure to receive actual or timely notice or receipt of incomplete or incorrect information about the examination; and 3) a death or serious illness in the claimant's immediate family. 20 C.F.R. §§ 404.1518(b), 416.918(b). Further, if a claimant's treating physician objects to a consultative examination and the claimant provides the Commissioner with notice about the objection, "[i]n many cases, [the Administration] may be able to get the information ... [needed to assess disability] in another way." 20 C.F.R. §§ 404.1518(c), 416.918(c). In considering whether a claimant has provided "a good reason for failing to attend a consultative examination," the Commissioner must also consider the claimant's "physical, mental, educational, and linguistic limitations (including any lack of facility with the English language)." 20 C.F.R. §§ 404.1518(a), 416.918(a). See Higbee, 975 F.2d at 562 ("it would be contrary to the purpose" of the disability program to deny a claimant benefits because of "failure to cooperate, when the record suggests the failure may be due to the very mental illness that [could] render[] [a claimant] eligible for benefits").

## C. THE ALJ'S EVALUATION OF DISABILITY

In this case, the ALJ first determined that plaintiff failed to provide a sufficient reason, according to the standards set forth in 20 C.F.R. § 404.1518, for failing to attend a consultative psychological examination directed by the ALJ. [AR at 24, 27-28, 36.] On that basis, the ALJ denied plaintiff's disability claim. [AR at 28, 36.]

The ALJ also denied plaintiff's disability claim under the five-step process described above. At step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since February 11, 2002, the alleged onset date of disability.[2] [AR at 28.] At step two, the ALJ concluded that plaintiff "has the following severe combination of impairments: status post bilateral inguinal hernia; renal calculi; rectal bleeding; history of hypertension; history of hypercholesterolemia; obesity; diverticulitis of the colon; kidney stone; and depression." [Id.] At

---

[2] The ALJ also determined that plaintiff was insured for Disability Insurance Benefits purposes through March 31, 2006. [AR at 28.]

step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 29.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work,[4] but that he is limited in the "mental realm" such that he "is able to do only simple, routine, and repetitive work with frequent contact with the general public, coworkers, and supervisors." [AR at 31.] At step four, the ALJ concluded that plaintiff is unable to perform his past relevant work. [AR at 37.] At step five, using the Medical-Vocational Rules as a framework and the vocational expert's answers to the interrogatories, the ALJ concluded that plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [AR at 38.] Accordingly, the ALJ found that plaintiff is not disabled. [AR at 38-39.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) failed to properly abide by the Appeals Council's October 31, 2006, remand order; (2) erred in ordering plaintiff to undergo a consultative psychological examination; and (3) failed to properly consider whether plaintiff's mental impairment meets or equals § 12.05C of the Listing. [See JS at 2.] As set forth below, the Court disagrees with plaintiff's position and affirms the ALJ's decision.

### PLAINTIFF'S FAILURE TO ATTEND THE CONSULTATIVE PSYCHOLOGICAL EXAMINATION

On December 8, 2004, before the ALJ's first unfavorable decision in this case, plaintiff underwent a psychological evaluation conducted by Dr. Isadore Wendel, a consultative clinical psychologist. [AR at 467-70.] In examining plaintiff, Dr. Wendel administered two tests: a

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

Comprehensive Test of Nonverbal Intelligence ("CTONI") and a Bender-Gestalt-II ("Bender-2"). [AR at 467.] The CTONI results indicated that plaintiff has a pictorial nonverbal IQ of 64, a geometric nonverbal IQ of 70, and an overall nonverbal IQ of 64. [AR at 469.] Dr. Wendel remarked that "[i]t is not clear why [plaintiff] did so poorly on Pictorial Analogies and Geometric Analogies," which are components of the CTONI test. [Id.] However, he asserted that "[t]he explanation may lie in some combination of attentional variables and cultural differences ... [or] that [plaintiff] has some brain damage or dysfunction which affects his performance on some subscales of this test." [AR at 469-70.] Dr. Wendel also noted that the Bender-2 results did not suggest that plaintiff has "brain damage or dysfunction," but that such damage or dysfunction "cannot be ruled out on the basis of a Bender [test] alone." [AR at 470.] Based on his examination, Dr. Wendel diagnosed plaintiff with depression not otherwise specified and opined that plaintiff "is probably able to perform simple forms of work."[5] [Id.]

In the ALJ's first decision (dated June 7, 2005), the ALJ summarized some of Dr. Wendel's findings, but did not discuss plaintiff's CTONI IQ scores. [See AR at 678.] In vacating the June 7, 2005, decision and remanding the matter back to the ALJ for further proceedings, the Appeals Council noted that "[a]lthough [Dr. Wendel] did not diagnose mental retardation, [plaintiff's] representative alleged that [plaintiff's] mental impairment meets section 12.05C of the Listing of Impairments."[6] [AR at 690.] The Appeals Council directed the ALJ to "address [plaintiff's]

---

[5] Dr. Wendel also opined about plaintiff's various mental work-related limitations, finding that plaintiff has "mild restrictions of daily activities"; moderate difficulties in social functioning (including a moderate inability to respond appropriately to co-workers, supervisors, and the public in a work setting); and no unusual delay related to concentration and persistence (although Dr. Wendel asserted that it was not clear if plaintiff could work at a competitive pace). [AR at 470.] Dr. Wendel also found "no clear evidence" that plaintiff has "repeated episodes of emotional deterioration in work-like situations." [Id.] However, he stated that this might depend on plaintiff's "varying physical condition and ... ability to keep up in a competitive manner at a job." [Id.]

[6] To meet § 12.05 of the Listing, a claimant must demonstrate that his impairment "satisfies the diagnostic description in the introductory paragraph [of § 12.05] and any one of the four sets of criteria" in paragraphs A, B, C, or D of § 12.05. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A. The introductory paragraph to § 12.05 states: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the (continued...)

contention" by "set[ting] forth specific findings and evaluation concerning the potential applicability of section 12.05C of the Listing in Appendix 1 to Subpart P." [Id.]

On remand and during the July 23, 2007, hearing, the ALJ ordered plaintiff to undergo a consultative psychological examination. [AR at 798.] The ALJ specifically warned plaintiff "[i]f you fail to go to the consultative examination, I could deny the claim strictly on the basis that you did not go. I have no desire to do that." [Id.] The ALJ explained that he would arrange for plaintiff to undergo a series of psychological tests, including the Rey 15 test, which, according to the ALJ, is "a non-language dependent examination." [AR at 799.] On October 3, 2007, before the ALJ scheduled the consultative psychological examination, plaintiff underwent a psychological consultation performed by Dr. Anna Levi, a licensed psychologist hired directly by plaintiff, that was conducted in plaintiff's native language, Armenian.[7] [AR at 503-07.] Among other psychological tests, Dr. Levi conducted a Test of Nonverbal Intelligence -- Third Edition ("TONI III"), which demonstrated that plaintiff has the developmental quotient ("DQ") of 68, "indicating nonverbal intellectual abilities to be mildly deficient, consistent with mild mental retardation." [AR at 505.] Dr. Levi also conducted a Rey 15 Item Memory Test that "demonstrated valid performance and lack of malingering." [AR at 506.] Pursuant to her examination, Dr. Levi diagnosed plaintiff with "Major Depressive Disorder, Recurrent, Severe and Mild Mental Retardation (provisional)." [Id.] On October 10, 2007, plaintiff sent the ALJ a copy of Dr. Levi's psychological consultation report. [AR at 502.] Plaintiff also submitted a letter with the report, in

---

[6](...continued)
developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. [¶] The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05. To satisfy the requirements of § 12.05C, a claimant must show that he has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. When a claimant has different IQ scores for his verbal, performance, or full scale IQ, the lowest score is used to evaluate if the claimant meets or equals § 12.05 of the Listing. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00D(6)(c).

[7] Plaintiff contends that he arranged his own psychological evaluation because "[o]ver two months following the hearing, the examination had yet to be ordered" by the ALJ, and plaintiff "was becoming ... restless" as "[a]ttempts to expedite the process of examination had failed." [JS at 9.]

which he expressed his opinion that "[i]t appears beyond dispute that there is clear and sufficient evidence in the record to support [a favorable disability finding] ... under Section 12.05C of the Listing[]." [Id.]

On October 18, 2007, the ALJ arranged for plaintiff to undergo a consultative psychological examination scheduled to take place on November 9, 2007. Plaintiff and his attorney were sent multiple notifications about the date and time of the examination. [AR at 708-09, 711.] On November 13, 2007, after plaintiff failed to attend the consultative psychological examination, plaintiff and his attorney were notified that plaintiff's case would be closed if he failed to contact the assigned analyst within 10 days. Apparently, neither plaintiff nor his attorney contacted the assigned analyst as directed. [AR at 711.] However, on December 26, 2007, plaintiff sent the ALJ a letter with the following statement concerning his failure to attend the consultative psychological examination:

> With regard to the psychological evaluation that [plaintiff] failed to attend, we would again insist that such an examination was not warranted in the first place, in light of the thorough and detailed report of Dr. Lev[i]'s examination that was forwarded to your Honor along with the [October 10, 2007,] correspondence, and which further corroborated the psychological test results [found by Dr. Wendel] at [AR 467-70].

[AR at 712.] Plaintiff also quoted 20 C.F.R. § 404.1519a(b) defining "situations requiring a consultative examination"[8] and argued that the November 2007 consultative psychological

---

[8] Specifically, 20 C.F.R. § 404.1519a(b) provides:

> A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultative examination: (1) The additional evidence needed is not contained in the records of your medical sources; (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source; (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or (5) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your

(continued...)

examination was not warranted because none of the criteria listed in 20 C.F.R. § 404.1519a(b) had been met. [AR at 712-13.] Specifically, plaintiff asserted that "[t]he record is clear, consistent, unambiguous and sufficient with regard to [plaintiff's] mental functioning" and indicates that plaintiff's intellectual functioning "fall[s] squarely within the requirements of 12.05(C) of the L[is]ting[]." [AR at 713.]

In the second decision (dated March 27, 2008), the ALJ concluded that plaintiff failed to provide sufficient reasons, according to the standards set forth in 20 C.F.R. § 404.1518, for failing to attend the psychological consultative examination as directed by the ALJ. [AR at 24, 27-28, 36.] Specifically, the ALJ concluded that the psychological examination "was necessary to establish the severity of [plaintiff's] mental condition," and that "substantial evidence supports the finding that [plaintiff] refused to cooperate in the consultative examination." [AR at 28.] Accordingly, the ALJ denied plaintiff's disability claim. [AR at 28, 36.]

In the Joint Stipulation, plaintiff argues that it was erroneous for the ALJ to deny him benefits due to his failure to attend the November 2007 consultative psychological evaluation. [JS at 9-11.] Specifically, plaintiff argues that the consultative psychological examination ordered by the ALJ was "wholly unwarranted," given the existing evidence pertaining to his mental impairment, and that the ALJ violated 20 C.F.R. § 404.1519a in scheduling the examination. [JS at 9-10.] For these reasons, plaintiff contends that his "failure to attend the consultative examination should not have adversely affected the [disability] determination, and should certainly not have been outcome-determinative." [JS at 11.]

In denying plaintiff's disability claim due to plaintiff's failure to attend the November 2007 consultative psychological examination, the ALJ's decision applied the correct legal standards under 20 C.F.R. § 404.1518 and was based on substantial evidence. See Moncada, 60 F.3d at 523; Drouin, 966 F.2d at 1257. As explained supra, an ALJ may properly deny disability benefits

---

[8](...continued)

impairment is not established.

20 C.F.R. § 404.1519a(b); see also 20 C.F.R. § 416.919a(b).

when a claimant, without good reason, fails to undergo a consultative examination that the ALJ scheduled in order to obtain information that the ALJ deemed necessary to make a disability determination. See 20 C.F.R. §§ 404.1518(a), 416.918(a) ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination ... which we arrange for you to get information we need to determine your disability ..., we may find that you are not disabled."); see also 42 U.S.C. § 423(f) (disability benefits may be revoked where a recipient "fails, without good cause, to cooperate in a review of the entitlement to such benefits"); Kreidler v. Barnhart, 385 F.Supp.2d 1034, 1037 (C.D.Cal. 2005) (termination of Disability Insurance Benefits warranted where plaintiff failed to attend scheduled consultative examinations) (citing 20 C.F.R. §§ 404.1518(a)-(b)); Keach v. Barnhart, 2004 WL 859331, at * 6 (N.D.Cal. April 9, 2004) ("an individual who refuses to attend a consultative examination may, as a consequence, be found not disabled").

Whether the record evidence was sufficiently developed to make a disability determination was a matter to be decided by the ALJ, not by plaintiff. See 20 C.F.R. §§ 404.1527(c), 416.927(c) ("After we review all of the evidence relevant to your claim, including medical opinions, we make findings about what the evidence shows. ... If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence ... [such as by] ask[ing] you to undergo a consultative examination at our expense[.]"). Indeed, if the ALJ concluded that the evidence was insufficient to make a disability determination concerning plaintiff's mental impairments, the ALJ had an affirmative duty to develop the record. See Celaya, 332 F.3d at 1183; 20 C.F.R. §§ 404.1512(d)-(f), 416.912(d)-(f); Higbee, 975 F.2d at 562. Even if the Court agreed with plaintiff that the evidence pertaining to plaintiff's mental impairment was sufficiently developed by the time the November 2007 consultative psychological examination was scheduled, it was still a rational interpretation of the existing evidence for the ALJ to conclude that additional evidence was necessary to make a disability determination in this case. Notably, when the contested consultative psychological examination was ordered, the case was on remand from the Appeals Council for the ALJ to address whether plaintiff's impairments met

§ 12.05C of the Listing due to his alleged mental retardation. [AR at 690.] Dr. Wendel's 2004 psychological evaluation indicated that plaintiff's low IQ scores -- relevant to whether plaintiff's mental impairment met § 12.05C of the Listing -- may have been attributable to "cultural differences." [AR at 469-70.] During the post-remand July 2007 hearing, the ALJ asserted that the new consultative psychological examination would include a Rey 15, a test that the ALJ asserted was not language-dependent. [AR at 799.] Although Dr. Levi's psychological consultation was conducted in plaintiff's native language and included the Rey 15 [AR at 503, 506], the Court cannot conclude that the ALJ ordering an additional psychological examination was not a rational interpretation of the evidence, especially because plaintiff's intellectual functioning was central to a § 12.05C Listing determination. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05C. This Court must defer to the ALJ's rational evidentiary determination that an additional consultative psychological examination was necessary to reach an informed disability determination concerning plaintiff's mental impairment. See Moncada, 60 F.3d at 523.

Plaintiff's asserted reason for failing to attend the 2007 consultative psychological examination -- i.e., because plaintiff concluded that the medical evidence pertaining to his mental impairment was sufficiently clear and unambiguous so that an additional consultative examination was unwarranted -- was not a "good reason" under 20 C.F.R. §§ 404.1518(a)-(b), for failing to attend the consultative psychological examination ordered by the ALJ. See 20 C.F.R. §§ 404.1518(b), 416.918(b) (listing examples of "good reasons" to miss a consultative examination). The Court also notes that although the record indicates that plaintiff has mental impairments and is not fluent in English, plaintiff does not assert (nor does the record suggest) that he did not attend the November 2007 consultative psychological examination as a result of his mental impairments or his lack of English fluency. See 20 C.F.R. §§ 404.1518(a), 416.918(a) (mental limitations and language limitations must be taken into account when considering a claimant's reason for missing a consultative examination). Rather, missing the consultative examination appointment appears to have been an informed and deliberate decision on plaintiff's part. Accordingly, the Court concludes that substantial evidence supports the ALJ's denial of disability benefits on the basis that plaintiff failed to provide good reason, under 20 C.F.R. § 404.1518, for

missing the November 2007 consultative psychological examination.[9] See Carpenter v. Astrue, 2010 WL 841281, at * 4 (N.D.Cal March 10, 2010) (ALJ properly denied benefits under 20 C.F.R. § 404.1518 where "[t]he only reason [plaintiff] gave for missing her consultative examinations was that she believed the relevant information was already in her record," as that did "not qualify as a good reason to miss her examinations") (citing 20 C.F.R. § 404.1518(b)); see also Kreidler, 385 F.Supp.2d at 1037 (revocation of benefits proper where plaintiff did not provide good cause, under 20 C.F.R. § 404.1518, for failing to attend consultative examinations and "absolutely nothing in the record suggests plaintiff's failure to cooperate was due to her mental impairment").

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: May 3, 2010

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

[9] As the ALJ properly denied benefits on this ground, the Court does not consider plaintiff's remaining contentions of error set forth in the Joint Stipulation.